[No. G040506. Fourth Dist., Div. Three. Aug. 4, 2009.]

In re FAIRWAGELAW in Voluntary Dissolution;
DAVID J. FULLER et al., Petitioners and Respondents, v.
JOHN M. HEURLIN, Objector and Appellant.

**COUNSEL**

John M. Heurlin, in pro. per., for Objector and Appellant.

Law Offices of Garrett S. Gregor and Garrett S. Gregor for Petitioners and Respondents.

**OPINION**

**IKOLA, J.**—Appellant John M. Heurlin appeals from the judgment entered in the voluntary dissolution of FairWageLaw (FairWage), a professional corporation of which he was a shareholder. He challenges the court's finding he was not a party to the voluntary dissolution proceeding, which led the court to deny his efforts to secure discovery, obtain summary judgment, and call witnesses at the dissolution hearing.

Heurlin further contends the court violated his right to due process by entering judgment against him. The dissolution judgment assessed FairWage's dissolution litigation expenses against Heurlin's shareholder interest, and ordered him to pay FairWage the deficiency of $19,422.

On this latter issue, we reverse. Like shareholders generally, Heurlin was not a party to the dissolution proceeding. The dissolution petition did not give Heurlin notice FairWage would seek to recover its litigation expenses from him. And because Heurlin was a nonparty, the dissolution hearing did not afford him the opportunity to be heard on these claims. The court and counsel, mired in an infrequently invoked proceeding for judicial supervision of the voluntary winding up of a corporation, lost sight of fundamental due process principles while adjudicating the respective rights of the adverse parties. We publish this opinion to assist future litigants and the courts in devising procedures to preserve these fundamental guarantees when the principal shareholders and the corporation are making claims against each other during court supervision of a winding up under Corporations Code section 1904.[1] Of course, not all judicial supervisions of a corporate winding up will involve claims by the principal shareholders against each other or against the corporation. But where, as here, the principals are, to understate it, not getting along, the essentially supervisory role of the court under sections 1904, 1806, and 1807 cannot be utilized to summarily adjudicate competing claims without affording the parties the benefits and burdens of our normal rules of civil procedure.

## FACTS

Heurlin and two other lawyers, respondents David J. Fuller and Henry P. Schrenker, formed FairWage as one-third shareholders intending to prosecute wage and hour class actions. Fuller and Schrenker voted to voluntarily dissolve FairWage in February 2005, when they discovered Heurlin would be suspended for two years from practicing law. Heurlin filed notices of attorney liens in two of FairWage's class actions in August 2005, claiming an interest in any attorney fee payments to the firm.

After Heurlin filed his attorney fee liens, FairWage petitioned the court to take jurisdiction over the voluntary dissolution. FairWage asked for an order directing all shareholders, creditors, and claimants to show cause why the court should not "make orders and adjudge as to any and all matters . . . set forth and permitted in California Corporations Code Sections 1802–1808" and, after a hearing, to "enter [an] order assuming jurisdiction over the winding up of the affairs of FAIRWAGELAW." It served the petition on Heurlin. The court granted the petition in October 2005. It ordered FairWage to publish notice to creditors and claimants that they would have six months to present their claims. FairWage served the order granting the petition and the order for notice to creditors on Heurlin.

---

[1] All further statutory references are to the Corporations Code unless otherwise stated.

Heurlin attempted to obtain discovery in the voluntary dissolution proceeding. He served written discovery requests on Schrenker and Fuller, which he followed by filing motions to compel responses. Schrenker and Fuller opposed the motions on the ground Heurlin was not a named party to the voluntary dissolution proceeding, had not intervened in it, and thus lacked standing to seek discovery. The court apparently agreed and denied the motions in February 2006.

In March 2006, Heurlin submitted a claim against FairWage in the voluntary dissolution proceeding. The claim stated, "in accordance with the order of this Court entered October 4, 2005, Respondent John M. Heurlin makes a claim against FairWage Law, a professional corporation, its officers, agents, and shareholders of not less than $1,091,200.00."

Also in March 2006, Heurlin filed a separate civil action against FairWage and respondents, asserting various direct and derivative claims against respondents and FairWage. The court stayed litigation in that case. On Heurlin's motion, the court consolidated Heurlin's action with the voluntary dissolution in March 2007, while continuing the stay on litigating Heurlin's complaint. The court continued the stay in April 2007 and denied Heurlin's motion to lift the stay in January 2008, all in apparent disregard of the consolidation order, which had expressly ruled "that only one set of findings of facts and conclusions of law (if appropriate), or jury decision, will be filed and only one judgment will be entered."

In the meantime, Heurlin appeared at case management conferences in the voluntary dissolution proceeding and continued, futilely, to request discovery. He also moved for summary judgment on his claim in the voluntary dissolution proceeding in September 2007. He contended the undisputed evidence showed the reasonable value of his legal work on FairWage's class actions was at least $740,000, and that he was entitled to this sum in quantum meruit as a matter of law.

The court heard argument on Heurlin's summary judgment motion and denied it, finding he lacked standing to file it. It noted in its minute order, "Service of notice of a hearing per [section 1904] does not make [Heurlin] a respondent in these proceedings. Further, he has not filed a formal response to the petition."

FairWage moved for an order ratifying its rejection of Heurlin's claim. The court granted the motion in January 2008. Its order stated FairWage properly rejected the claim "because Heurlin, a shareholder of FairWage, had no

contract to be paid fees and that his compensation, if any, arose exclusively through his status as a shareholder of FairWage." It further stated "all known debts owed by FairWage to Heurlin have been paid"—even though just two weeks prior, the court effectively severed Heurlin's civil action and reverted it to a separate proceeding by continuing to stay it.

The court held a bench trial on the voluntary dissolution in April 2008. At the start, it granted Schrenker and Fuller's motion in limine to exclude Heurlin from the proceeding, noting that Heurlin was not a party and had a history of disrespecting the court. It also quashed Heurlin's notice to Schrenker and Fuller to appear at trial and produce documents. The court stated it would allow Heurlin to remain in the courtroom and testify. After the court announced these rulings, Heurlin left the courtroom. The trial proceeded without him.

The court entered a "Judgment of Dissolution" later that month. It declared FairWage was duly wound up and all debts had been paid or provided for. The court noted Heurlin's claim had been rejected earlier because he "failed to properly intervene in the Dissolution action to raise and assert any causes of action he might have against the corporation or its shareholders." It ordered FairWage to set aside $100,000 "as a legal reserve for any appeal, and to defend John Heurlin's consolidated action" (which had been effectively severed due to the perpetual stay). The court found Heurlin was entitled to one-third of FairWage's assets as of the date of his suspension, but was not entitled to any legal fees FairWage earned after his suspension. Heurlin's shareholder interest was approximately $140,000.

Against this, the court assessed Heurlin approximately $160,000 in litigation expenses FairWage incurred in prosecuting the voluntary dissolution and defending against Heurlin's still pending civil action. It found the "litigation expenses . . . were incurred solely at the instigation of John Heurlin," whose "deplorable" conduct regarding FairWage included: "his refusal to surrender his shares of stock in FAIRWAGELAW, his failure to negotiate a resolution of that issue in good faith, breach of his fiduciary duties to the corporation, his failure to appropriately disclose to the corporation the likelihood of his actual suspension shortly after the formation of the corporation, his abuse of the legal process in filing meritless liens in the [class action] cases, taking frivolous appeals and his tactics of harassment . . . ." Because FairWage's litigation expenses exceeded Heurlin's shareholder interest, the court ordered Heurlin to "pay the sum of $19,422.00 to the corporation."

## DISCUSSION

*Heurlin Is Aggrieved and Has Standing to Appeal*

Respondents contend Heurlin lacks standing to appeal, noting only a "party aggrieved may appeal . . . ." (Code Civ. Proc., § 902.) They focus on the court's finding he is not a party to the voluntary dissolution proceeding. They claim if he is not a party, by definition he cannot be a "party aggrieved."

■ Nonparties who are aggrieved by a judgment may appeal from it. "[A]ny entity that has an interest in the subject matter of a judgment and whose interest is adversely affected by the judgment is an aggrieved party and is entitled to be heard on appeal. However, the aggrieved party's interest must be immediate, pecuniary and substantial, and not merely a nominal or remote consequence of the judgment." (*Howard Contracting, Inc. v. G.A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 58 [83 Cal.Rptr.2d 590] (*Howard*); accord, *People v. Hernandez* (2009) 172 Cal.App.4th 715, 720 [91 Cal.Rptr.3d 604] (*Hernandez*) [nonparty pawnbrokers may appeal order directing them to release pledged goods].)

Heurlin is sufficiently aggrieved by the judgment to appeal from it, regardless of whether he is a party to the dissolution proceeding. The judgment adjudicated the value of Heurlin's shareholder interest, offset FairWage's litigation expenses against his interest, and held him liable to FairWage for the $19,422 deficiency. The judgment "adversely affect[s]" his "immediate, pecuniary and substantial" shareholder interest in FairWage. (*Howard, supra,* 71 Cal.App.4th at p. 58.) He has standing to appeal from it.

*The Court Wrongly Adjudicated Heurlin's Interest Without Due Process*

■ While Heurlin may be a "party aggrieved" with standing to appeal the judgment, the court correctly found he was not a party to the voluntary dissolution proceeding. "Any corporation may elect voluntarily to wind up and dissolve by the vote of shareholders holding shares representing 50 percent or more of the voting power." (§ 1900, subd. (a).) The corporation may petition the court, "upon such notice to . . . persons interested in the corporation as shareholders and creditors as the court may order," to "take jurisdiction over such voluntary winding up proceeding . . . ." (§ 1904.) "The court, if it assumes jurisdiction, may make such orders as to any and all matters concerning the winding up of the affairs of the corporation and for

the protection of its shareholders and creditors as justice and equity may require." (*Ibid.*) The court's jurisdiction includes requiring the corporation's creditors and claimants to present and prove their claims, determining or compromising all claims against the corporation and ensuring any unpaid claims have been provided for (§ 1806, subds. (a), (b)), determining "the rights of shareholders . . . in and to the assets of the corporation" (*id.*, subd. (c)), and ordering the corporation "wound up and . . . dissolved" (*id.*, subd. (k)). (See § 1904 [§ 1806 applies to voluntary dissolution once court assumes jurisdiction].)

 The shareholders are not automatically parties to a voluntary dissolution proceeding. "Although shareholders were once considered indispensable parties in a proceeding to dissolve the corporation, they are no longer considered necessary parties . . ." in most cases. (16A Fletcher, Cyclopedia of the Law of Private Corporations (rev. ed. 2003) § 8103, pp. 179–180, fn. omitted.) The shareholders are not parties to a dissolution unless they are named as defendants or they intervene. (*Ibid.* [shareholder may be named defendant]; see *Hagan v. Superior Court* (1960) 53 Cal.2d 498, 504 [2 Cal.Rptr. 288, 348 P.2d 896] (*Hagan*) ["an intervenor, whether he be shareholder or creditor, may seek . . . relief . . ." in a dissolution]; *Rosner v. Benedict Heights, Inc.* (1963) 219 Cal.App.2d 1, 5 [32 Cal.Rptr. 764] [shareholder properly intervened in dissolution].) And shareholders cannot be named as defendants unless the petition seeks relief against them. (*Weisman v. Odell* (1970) 3 Cal.App.3d 494, 497–499 [83 Cal.Rptr. 563] (*Weisman*); 16A Fletcher, Cyclopedia of the Law of Private Corporations, *supra*, § 8103.) Here, the petition sought no relief against Heurlin, and he did not intervene. He never became a party to the voluntary dissolution proceeding. The court correctly rebuffed his litigation efforts. Heurlin had no right to serve discovery, file motions, or call witnesses at the dissolution trial.

 But because Heurlin is *not* a party to the voluntary dissolution proceeding, the court violated his right to due process by adjudicating FairWage's claim against him. "The federal and state Constitutions generally require that individuals be accorded procedural due process before being deprived of a protected property interest. [Citations.] This requirement ensures fair play, protects an individual's use and possession of property from arbitrary encroachment and minimizes unfair or mistaken deprivations of property. [Citation.] Whenever property is taken, due process requires some form of notice and a hearing . . . ." (*Hernandez, supra*, 172 Cal.App.4th at p. 721 [pawnbrokers had due process right to notice and hearing before court deprived them of possessory interest in pledged goods].)

The petition gave no notice to Heurlin the court might assess FairWage's voluntary dissolution litigation expenses against his shareholder interest. Nor

did Heurlin have prior notice the court would hold him liable for FairWage's defense costs in his effectively severed, still-pending civil action against it. Moreover, Heurlin lacked prior notice the court would aggregate these assessments to wipe out his entire shareholder interest and enter a money judgment against him for the $19,422 deficiency.

The *only* (albeit inadequate) notice that FairWage would be seeking monetary relief against Heurlin appears to have been an *argument* made in FairWage's trial brief filed on the day trial commenced. In that trial brief, FairWage asserted various breaches of fiduciary duty and corporate waste as grounds to offset Heurlin's shareholder interest. Giving notice of a monetary claim by way of a trial brief, filed on the day of trial, in a proceeding to which Heurlin was not a party, and whom FairWage had successfully ousted from participation in the trial, was woefully inadequate, late, and unfair. If FairWage believed it had valid claims for damages against Heurlin, it should have proceeded as required in all civil disputes—by filing a complaint, receiving an answer, conducting discovery, litigating any dispositive motions, and having an *adversary* trial. None of this was done.

As noted, Heurlin also lacked an opportunity to be heard. He had no right to participate in the voluntary dissolution proceeding itself—he was not named a defendant, the petition sought no relief against him, and he did not intervene. (See *Hagan, supra*, 53 Cal.2d at p. 504; *Weisman, supra*, 3 Cal.App.3d at pp. 497–499; 16A Fletcher, Cyclopedia of the Law of Private Corporations, *supra*, § 8103.) Thus, he had no right to serve discovery in the dissolution proceeding or seek summary judgment on the claim he filed. But Heurlin had every right to participate in his separate civil action. While the court consolidated that action with the dissolution, it rescinded the consolidation sub rosa by *staying* the civil action and allowing only the dissolution to proceed. Indeed, the court entered a "Judgment of Dissolution" that did *not* adjudicate the causes of action asserted in Heurlin's complaint and created a reserve to defend against his civil action. Despite its consolidation order, the court treated this action as a voluntary dissolution proceeding, nothing more. And because Heurlin had no right to be heard in the voluntary dissolution, the court should not have adjudicated FairWage's litigation expense claims against him.

■ Throughout this case, FairWage has harped on Heurlin's decision not to intervene in the voluntary dissolution proceeding. But Heurlin *did* file a separate civil action and successfully moved to consolidate his complaint with the dissolution proceeding. How this translates into a "failure to intervene" escapes us. Heurlin did exactly as he should have done to pursue his claims against the corporation. (See § 1807, subd. (e) ["Suits against the corporation on claims which have been rejected shall be commenced within

30 days after written notice of rejection thereof is given to the claimant."].) The corporation, however, wholly failed to fulfill *its* obligation to file a complaint against Heurlin on *its own* monetary claims against him, thereby precluding him from defending in the normal course. The claims procedure set out in section 1807 provides an efficient means for administering the winding up of a corporation. Undisputed claims may be presented and allowed without litigation. But disputed claims that are rejected must necessarily be resolved in an ordinary lawsuit. (*Id.*, subd. (e).) Similarly, where the corporation asserts claims against another, it may not do so by simply declaring the money due. The corporation must also file suit to recover on disputed monetary claims. The administrative procedures for judicial management of a corporate winding up do not displace the right to due process.

■ The consequences of proceeding without an adversary are apparent. FairWage's entire offset against Heurlin's shareholder interest consisted of attorney fees and related litigation costs incurred in the dissolution proceeding and in defending Heurlin's separate (stayed) civil action. We have found no authority, and none has been provided, allowing attorney fees to be shifted in this manner in this case. "California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees." (*Trope v. Katz* (1995) 11 Cal.4th 274, 278 [45 Cal.Rptr.2d 241, 902 P.2d 259].) "Except as attorney's fees are *specifically* provided for by statute, the measure and mode of compensation . . . is left to the agreement, express or implied, of the parties . . . ." (Code Civ. Proc., § 1021, italics added.) The statutes providing for court supervision over the winding up of a voluntary corporate dissolution do not "specifically provide[] for" recovery of attorney fees incurred in the court proceedings from one shareholder at the expense of another. Whether such authority can be found in some other corner of the law, we leave to the trial court to decide in an *adversary* process on retrial.

FairWage, its counsel, and the court were all clearly frustrated by Heurlin's history of taking some improper and ill-advised actions in connection with the dissolution of FairWage, a history we have joined in criticizing. (*In re FairWageLaw* (Dec. 7, 2006, G037378) [nonpub. opn.].) But Heurlin was nevertheless entitled to the protections afforded every litigant by our usual guarantees of due process—notice and an opportunity to be heard. Those guarantees were lacking in this proceeding. Before the corporation is wound up, both Heurlin and the corporation should have the opportunity to litigate their respective claims against each other in the normal adversary fashion—complaint, answer, discovery, dispositive motions if any, and trial.[2]

---

[2] Respondents' and Heurlin's sanctions motions are denied.

## DISPOSITION

The judgment is reversed. Heurlin shall recover his costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.